## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CATHY WIESELER-MYERS, individually and on behalf of classes of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. _____ |
| SUNRISE COMMUNICATIONS, INC., a Missouri corporation, | ) ) ) | **JURY TRIAL DEMANDED** |
| and | ) ) | |
| AT&T, INC., a Delaware corporation, | ) ) | |
| *Defendants.* | ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL WITH INJUNCTIVE RELIEF SOUGHT

Plaintiff Cathy Wieseler-Myers (hereinafter "Plaintiff") individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF THE ACTION

1.  AT&T, Inc. (hereafter, "AT&T"), in partnership with its "Solutions Providers" such as Sunrise Communications, Inc. (hereafter, "Sunrise") (collectively, "Defendants") either sent, or caused to be sent, automated "text blasts" to thousands of people in the hopes of generating business leads. In doing so, it sent those messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA"),

1381248.1

1

which require that such telemarketing texts and calls be made only to individuals who provided "prior express written consent" to receive those messages from that seller.

2.     On February 11, 2015, a district court in the District of Montana granted final approval to a $45 million class action settlement resolving claims that AT&T violated the TCPA by making calls to persons who were not AT&T customers.  *Hageman v. AT&T Mobility, LLC*, Case No. 1:13-cv-00050-RWA (D. Mont.).  Notwithstanding its prior violations of the TCPA, AT&T has continued to violate the TCPA.

3.     Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendants in contacting Plaintiff and Class Members via text on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express written consent within the meaning of the TCPA. On behalf of the classes, Plaintiff also seeks an injunction requiring Defendants to cease all unauthorized automated telemarketing communications, and an award of statutory damages to the members of the classes, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

4.     This matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state.  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.  This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

1381248.1

2

5. This Court has personal jurisdiction over Defendants because one of Defendants' principal places of business is in this District and a substantial part of the events concerning the unauthorized text messages at issue occurred in this District, establishing minimum contacts showing Defendants have purposefully availed themselves of the resources and protection of the State of Missouri.

6. Venue is proper in the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because one of Defendants' principal places of business is located in this District and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.

7. Venue is proper in the Southern Division of this District because Defendant Sunrise has its principal place of business in or near Springfield, Missouri.

## PARTIES

8. Plaintiff Wieseler-Myers is, and at all times relevant has been, a resident of the State of Colorado.

9. Defendant Sunrise Communications, Inc., is a Missouri corporation with its principal place of business in Springfield, Missouri.

10. Defendant AT&T, Inc. is a Delaware corporation with its principle place of business in Dallas, Texas, which conducts business throughout the country, including in the state of Missouri and in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

### The TCPA's Restrictions on Texts to Cellular Telephones

1381248.1

3

11.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers."  Included within the definition of "calls" made using an autodialer are automated text messages sent in bulk using an automated process.[2]  In other words, a text is a call for purposes of the TCPA.

13.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     The FCC also recognized that wireless customers are charged for incoming calls or texts whether they pay in advance or after the minutes are used.[3]

15.     The plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

16.     The FCC has defined prior express consent in 47 C.F.R. § 64.1200(f)(8) as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 FCC Declaratory Ruling").
[3] 2003 FCC Declaratory Ruling, at ¶ 165.

telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

17.     With regard to calls or texts made for telemarketing purposes, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

18.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).  Therefore, under the TCPA the burden is on defendants to demonstrate prior express written consent.

19.     While telemarketing calls to residential lines are exempted where there exists an "established business relationship," no such exemption applies to telemarketing calls to cell phones.  *See* 47 C.F.R. § 64.1200(f)(5).

20.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

21.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

22.     The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

23.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

---

[4] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

1381248.1

24.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS

### Sunrise Communications and AT&T

25.     Defendant Sunrise Communications, Inc. is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

26.     Defendant AT&T, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27.     Sunrise describes itself on its website[5] as having "working relationships with the phone, cable, and mobility companies. We provide the following services for our carrier partners: inbound and outbound call center services, traditional and digital marketing, and channel sub-agent partner sales." Among its customers are "AT&T, Verizon, Century Link, Time Warner Cable, Charter, Comcast, Mediacom, and DirecTV to name a few."

28.     With regard to AT&T, Sunrise was recognized as a "2017 Gold Champion Solution Provider."[6] "Solution Providers" "help [ ] customers to accelerate their digital evolution through an integrated portfolio of technology solutions, including mobility,

---

[5] http://sunrisecommunications.com/
[6] https://www.corp.att.com/alliance/champions.html

1381248.1

7

networking, IoT, collaboration, cybersecurity, and cloud."[7]  Said another way, AT&T Solution Providers such as Sunrise market and sell AT&T products and services to customers on behalf of AT&T.

29.    On July 24, 2015, AT&T completed its purchase of DirecTV.[8]  On or about that date, on information and belief, AT&T and its Solution Providers, including Defendant, began marketing and selling DirecTV services as part of AT&T's portfolio of products and services.

**Plaintiff Wieseler-Myers**

30.    On February 22, 2017, at 12:27 p.m. MST, Plaintiff Wieseler-Myers received an unsolicited text message on her cellular telephone with the telephone number 844-537-4381 in her caller ID.  The message said:

> Cathy, is your cable bill too high?  Start saving with DirecTV.  Qualified customers can also get $100 Gift Card.  Call 1-877-960-3437 now.  Reply STOP to Opt-Out.

31.    Calling the 1-877-960-3437 telephone number connects the caller to the Sunrise's customer support line for business purchases.  The 844-537-4381 number is not currently in service; in third party discovery in this case, Plaintiff will determine which person or entity was assigned that toll-free number as of February 22, 2017.

32.    Plaintiff has never contacted either Defendant for any purpose, and has no business relationship with Sunrise or AT&T.

33.    On information and belief, Sunrise, AT&T, or one of its vendors or marketing partners sent the text message to Plaintiff using an automated dialing system as defined by the

---

[7] https://www.corp.att.com/alliance/
[8] http://about.att.com/story/att_completes_acquisition_of_directv.html

1381248.1

TCPA and applicable FCC regulations. Whichever entity sent the text message, it was unquestionably sent on behalf of AT&T.

34. Defendants are, or should have been, aware that an automated texting operation marketing AT&T's products or services was engaging in telephone solicitation via text message in violation of the TCPA.

35. Defendants had the ability to prevent unauthorized texts in violation of the TCPA from being placed by automated calling operations conducted by themselves or by their vendors or marketing partners.

36. AT&T is directly liable for the telemarketing texts made on its behalf because it actively participated in those texts and was positioned to sign-up new business wholly derived from those texts.

37. AT&T was legally responsible for ensuring that its vendors and marketing partners complied with the TCPA, even if AT&T did not itself initiate the sending of the texts.

38. AT&T knew (or reasonably should have known) that its vendors or marketing partners were violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct.

## CLASS ACTION ALLEGATIONS

39. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

40. Plaintiff brings this action on behalf of herself and the following classes (together, the "Classes") pursuant to Federal Rule of Civil Procedure 23.

41.     Plaintiff proposes the following Class and Subclass definitions, subject to amendment as appropriate:

(i) <u>The Class</u>: All persons in the United States and its Territories who, within four years prior to the commencement of this litigation, received one or more texts on their cellular telephone advertising the sale of services provided by AT&T, sent via an automated telephone dialing system without providing prior express written consent to receive such texts.

(ii) <u>The Sunrise Subclass</u>: All persons in the United States and its Territories who, within four years prior to the commencement of this litigation, received one or more texts on their cellular telephone advertising the sale of AT&T products or services to be provided by or through Sunrise Communications, sent via an automated telephone dialing system without providing prior written express consent to receive such texts.

42.     Plaintiff Wieseler-Myers is a member of, and will fairly and adequately represent and protect the interests of, the Class and Subclass.

43.     Excluded from the Class and Subclass are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

44.     Plaintiff does not know the exact number of members in the Class and Subclass, but Plaintiff reasonably believes Class members number, at minimum, in the thousands in each class and subclass.

45.     Plaintiff and all members of the Class and Subclass have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste

of time and money, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

46.     This Class Action Complaint seeks injunctive relief and money damages.

47.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

48.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

49.     Further, all members of the Classes and Subclasses can be identified through records maintained by Defendants and/or their telemarketing agents and/or telephone carriers.

50.     There are well defined, nearly identical, questions of law and fact affecting all parties.

51.     The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class and Subclass members.

52.     Such common questions of law and fact include, but are not limited to, the following:

        a.      Whether Defendants used an automatic telephone dialing system in sending text messages to Class members' telephones to promote AT&T's goods or services.

        b.      Whether the Defendants can meet their burden of showing they obtained prior express written consent (*i.e.*, written consent that is clearly and unmistakably stated), to send such texts;

        c.      Whether the Defendants' conduct was knowing and/or willful;

        d.      Whether the Defendants are liable for statutory damages; and

e.     Whether the Defendants should be enjoined from engaging in such conduct in the future.

53.     As a person who received non-emergency texts on her cellular telephone using an automatic telephone dialing system without her prior express written consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such texts.

54.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

55.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

56.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## COUNT I

**Statutory Violations of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of all Classes and Subclasses as to all Defendants.**

57.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

1381248.1

12

58.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

59.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## COUNT II
### Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of all Classes and Subclasses as to all Defendants

61.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

63.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

64.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

Case 6:17-cv-03346-BCW   Document 1   Filed 10/31/17   Page 13 of 15

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.      As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.      As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every violation of the TCPA;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.      Such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Case 6:17-cv-03346-BCW   Document 1   Filed 10/31/17   Page 14 of 15

Dated:  October 31, 2017

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

By:  */s/ Matthew L. Dameron*

Matthew L. Dameron
Missouri Bar No. 52093
John F. Doyle
Missouri Bar No. 66626
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone:  (816) 945-7110
Facsimile:  (816) 945-7118
Email:  matt@williamsdirks.com
Email:  jdoyle@williamsdirks.com

Daniel M. Hutchinson
*pro hac vice* to be filed
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  dhutchinson@lchb.com

Matthew R. Wilson
*pro hac vice* to be filed
Michael J. Boyle, Jr.
*pro hac vice* to be filed
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066
Email:  mwilson@meyerwilson.com
Email:  mboyle@meyerwilson.com

*Attorneys for Plaintiff and the Proposed
Classes*